UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JASON B.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:23-cv-00561-JPH-MJD |
| | ) |
| MARTIN J. O'MALLEY, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Claimant Jason B. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Act. See 42 U.S.C. §§ 1382. Judge James Patrick Hanlon has designated the undersigned Magistrate Judge to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 14.] For the reasons set forth below, the Magistrate Judge **RECOMMENDS** that the Court **REVERSE** and **REMAND** the decision of the Commissioner.

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

## I. Background

Claimant applied for SSI in March of 2022. [Dkt. 9-5 at 8.] Claimant's application was denied initially and again upon reconsideration, and a hearing was held before Administrative Law Judge Teresa Kroenecke ("ALJ") on April 25, 2023. [Dkt. 9-2 at 36.] On May 24, 2023, ALJ Kroenecke issued her decision, in which she determined that Claimant was not disabled. *Id.* at 11. The Appeals Council then denied Claimant's request for review on October 5, 2023. *Id.* at 2. Claimant timely filed her Complaint on December 8, 2023, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for SSI, a claimant must have a disability pursuant to 42 U.S.C. § 1382c. Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is

not disabled. 20 C.F.R. § 416.920(a)(4). Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). If, at any step, the ALJ can make a conclusive finding that the claimant either is or is not disabled, then she need not progress to the next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

In reviewing a claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). While an ALJ need not address every piece of evidence, she "must provide a 'logical bridge' between the evidence and [her] conclusions." *Varga*, 794 F.3d at 813 (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether the claimant is disabled. *Id.*

### III. ALJ Decision

ALJ Kroenecke first determined that Claimant had not engaged in substantial gainful activity since the application date of March 14, 2022. [Dkt. 9-2 at 13.] At step two, the ALJ found that Claimant had the following severe impairments: "seizure disorder; diabetes mellitus; peripheral neuropathy; gender dysphoria; depression; anxiety; and posttraumatic stress disorder."

*Id*. At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 14. The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work, as defined in 20 CFR 416.967(b), except with frequent stooping, kneeling, crouching, and balancing; occasional crawling and climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; and no exposure to extreme heat, extreme cold, humidity, wetness, vibrations, or hazards, such as unprotected heights or dangerous machinery. The claimant is able to understand, remember, and carry out short, simple, routine instructions. She can sustain the attention and/or concentration needed for 8 hours in the workday on short, simple, routine tasks, but no fast-paced production work, such as assembly line work. She can have only occasional interactions with supervisors and coworkers, and no interactions with the general public as part of the job tasks/duties.

*Id.* at 17.

At step four, the ALJ found that Claimant has no past relevant work. *Id*. at 21. At step five, relying on testimony from a vocational expert ("VE"), the ALJ determined that Claimant was able to perform jobs that exist in significant numbers in the national economy. *Id*. Accordingly, ALJ Kroenecke concluded Claimant was not disabled. *Id.* at 23.

## IV. Discussion

Claimant organizes her brief into four separate issues. The Court addresses Claimant's arguments below, but groups certain related issues together to avoid redundancy.

### A. ALJ's Findings Regarding Claimant's Physical Impairments

Claimant raises two issues with regard to the ALJ's findings relating to Claimant's physical impairments, each of which is addressed, in turn, below.

*1. ALJ's Treatment of Medical Opinions*

Claimant argues that the ALJ failed to provide an adequately supported reason for rejecting the opinion of consultative examiner Stella Torralba-Palanca, M.D, in favor of the

4

opinions of two state agency consultants. With regard to the state agency medical consultants, the ALJ stated the following:

> The State agency medical consultants determined the claimant can perform light work, with additional postural and environmental limitations (Exhibits 2A; 4A). I find these opinions generally persuasive because they are consistent with and supported by the evidence as a whole. For example, with the exception of a few abnormalities, physical examinations throughout the record show largely normal findings (Exhibits 2F/16; 5F/7, 11, 15; 7F/6; 8F/11, 22). In addition, the claimant reported she can shop, walk, use public transportation, and perform a variety of household chores (Exhibit 6E; Hearing Testimony).

[Dkt. 9-2 at 20.] With regard to consultative examiner Stella Torralba-Palanca, M.D., the ALJ stated:

> Consultative examiner, Stella Torralba-Palanca, M.D., opined the claimant should be able to walk for 1 out of 8 hours, and lift/carry less than 20 pounds frequently and more than 40 pounds occasionally (Exhibit 7F/6). I do not find this opinion persuasive because it is not consistent with the opinions of the State agency medical consultants. Furthermore, it is not supported by Dr. Torralba-Palanca's own objective findings, which were largely unremarkable, including normal gait and no neurological abnormalities (Exhibit 7F/2-3, 6).

*Id.*

The ALJ was required to evaluate all medical opinions in the record on an equal basis for "persuasiveness." ALJs are instructed to evaluate all medical opinions using factors including whether the opinion is supported by objective medical evidence; the opinion's consistency with other evidence; the professional's relationship with the patient, including the length, frequency, purpose, and extent of treatment; and the professional's specialization. 20 C.F.R. § 416.920c(c). In addition, the regulation expressly recognizes that "[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder." 20 C.F.R. § 416.920c(c)(3)(v). After considering the relevant factors, an ALJ must articulate how persuasive she finds each medical opinion in her decision.

5

20 C.F.R. § 416.920c(b). The most important factors ALJs will use in determining the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Opinions that are supported by and consistent with objective medical evidence will be most persuasive. 20 C.F.R. § 416.920c(c)(1)-(2).

The reasons given by the ALJ for rejecting Dr. Torralba-Palanca's opinion that Claimant could only walk one hour out of an eight-hour work day are certainly minimal.[2] Her first reason—that it is inconsistent with the state agency consultants' opinions—is unhelpful, as it is equally true that the state agency consultant's opinions are inconsistent with those of Dr. Torralba-Palanca. Presumably, however, what the ALJ meant is this: since the ALJ found that the state agency consultants' opinions were consistent with the evidence as a whole, to the extent Dr. Torralba-Palanca's opinion conflicted with those opinions, Dr. Torralba-Palanca's opinions were not consistent with the evidence of record. The ALJ's second reason is that Dr. Torralba-Palanca's opinion were not consistent with her own examination findings, which were "largely normal." A more thorough opinion would have acknowledged the **abnormal** findings in Dr. Torralba-Palanca's report—namely "decreased range of motion in the lower spine forward flexion as well as shoulder flexion and abduction bilaterally," as well as obesity, [Dkt. 9-7 at 150]—and explained why those findings did not support Dr. Torralba-Palanca's conclusion that Claimant could only walk for one hour in an eight-hour day. However, as the Commissioner

---

[2] It is this opinion of Dr. Torralba-Palanca that differs from that of the state agency consultants, who found that Claimant could perform light work. Light work includes jobs that require "a good deal of walking or standing." 20 C.F.R. § 416.967(b). It also requires "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," *id.*, which is less than Dr. Torralba-Palanca found Claimant capable of carrying.

notes, the Seventh Circuit has, "[t]ime and time again, . . . emphasized that social-security adjudicators are subject to only the most minimal of articulation requirements. An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024) (citations omitted). Rather, all that is required "is that ALJs provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review.'" *Id.* (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). The ALJ's reasons here satisfy that minimum articulation requirement and her conclusion is supported by substantial evidence—namely, the opinions of the state agency consultants, who reviewed Claimant's medical records, including Dr. Torralba-Palanca's report, and nonetheless, in their medical opinion, reached a different conclusion regarding Claimant's ability to walk. *See* [Dkt. 9-3 at 8; Dkt. 9-3 at 18].

    Claimant's arguments to the contrary are not availing. First, Claimant argues that the ALJ impermissibly "'play[ed] doctor' by determining on her own that Dr. Torralba-Palanca's exam findings and assessment of Plaintiff's obesity, diabetes, and reports of joint pain do not support her opinion." [Dkt. 11 at 10] (citing *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) ("ALJs are *required to rely on expert opinions* instead of determining the significance of particular medical findings *themselves*.") (emphasis added); *Parker v. Colvin*, 660 F. App'x 478, 482 (7th Cir. 2016) ("ALJs are not meant to 'play doctor' by making their own independent medical findings rather than relying on expert opinion."); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (ALJs "must not succumb to the temptation to play doctor and make their own

medical findings")). That is simply not the case, given that the ALJ relied on the findings of the state agency consultants, who are medical experts.

Next, Claimant points to three "key factors undermining" the state agency consultants' opinions that she argues render the ALJ's reliance on those opinions erroneous. [Dkt. 11 at 11.] First, she notes that the state agency consultants failed to mention that Claimant was diagnosed with diabetic neuropathy by a podiatrist. That is true, but Dr. Torralba-Palanca's examination did not note diabetic neuropathy or any issues with Claimant's feet. In fact, her report states that Claimant had "[n]o complaints of weakness, numbness, or incoordination" and notes only low back pain and bilateral knee pain, not foot pain. [Dkt. 9-7 at 150.] Indeed, the podiatrist's own report also notes no numbness, tingling, or loss of muscle strength, and the only mention of foot pain is related to toenail problems, not neuropathy. *See* [Dkt. 9-7 at 165] (Claimant "presents today for complaints of painful elongated toenails" and "den[ies] other pedal complaints at this time."). Second, Claimant notes that the state agency consultants "failed to explain how Plaintiff's *extreme* obesity factored into their opinions that Plaintiff could perform the standing and walking requirements of Light work." [Dkt. 11 at 11] (emphasis in original). That is true, but, other than noting Claimant's height and weight, Dr. Torralba-Palanca's report also does not address the effects of Claimant's obesity on her ability to walk. Indeed, the ALJ noted in her decision that "there is no evidence that obesity has any significant impact on the claimant's ability to perform work-related activities," [Dkt. 9-2 at 14], and Claimant does not point to any such evidence in her brief. Finally, while Claimant claims that other medical evidence of record supports Dr. Torralba-Palanca's opinion, she points to, *inter alia*, a podiatrist's finding of antalgic gait and cadence, [Dkt. 11 at 11]; however, Dr. Torralba-Palanca herself found in her examination that Claimant had a normal gait. [Dkt. 9-7 at 150.]

The ALJ's findings regarding the relative persuasiveness of the opinions of Dr. Torralba-Palanca and the state agency consultants are supported by substantial evidence and are not otherwise erroneous. No remand on this issue is required.

*2. ALJ's Determination that Claimant Could Perform Light Work*

Claimant also argues that the ALJ's determination that Claimant has the residual functional capacity to perform light work with some postural and environmental limitations was not supported by substantial evidence. This argument is based almost entirely on Claimant's arguments that the ALJ improperly relied on the state agency consultants' opinions rather than that of Dr. Torralba-Palanca, which was considered and rejected above. *See* [Dkt. 11 at 21] ("Because the ALJ's reasons for rejecting Dr. Torralba-Palanca's opinion and Plaintiff's limitations were *not* supported (*see* Argument (I)-(II), *supra*), the RFC is also unsupported because it fails to account for those critical opinions and statements. Proper consideration of the opinions and Plaintiff's statements shows that she could *not* perform the physical requirements of Light, *or even Sedentary*, work and should have been found disabled."). Claimant mentions the ALJ's failure to fully credit her testimony regarding her subjective symptoms, citing to "Argument II, *supra*," but that argument focuses entirely on the ALJ's rejection of claimant's testimony regarding the symptoms caused by her **mental impairments**. Claimant makes no cogent argument with regard to the ALJ's consideration of her testimony regarding the symptoms from her physical impairments. Nor does Claimant point to any medical evidence or opinion of record other than Dr. Torralba-Palanca's opinion that Claimant could only stand for one hour per eight-hour work day that supports her argument that Claimant is unable to perform light work. And, as discussed at length above, the ALJ's decision to find Dr. Torralba-

9

Palanca's opinion less persuasive than the state agency consultants' opinion that Claimant could perform light work was not erroneous.

Claimant discusses at length the fact that the ALJ failed to expressly consider the effect of severe obesity on Claimant's RFC, but, as noted above, Claimant points to no evidence of record that suggests what those effects are. While severe obesity certainly could prevent a person from being capable of light work, as the cases cited by Claimant indicate, the bare fact that Claimant had a body mass index that put her in that category is not evidence that Claimant is so limited.

> Diagnosis does not equal disability. *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005); *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998). . . . What matters is the severity of the condition and how it limits plaintiff's capacity to work, based on clinical and/or laboratory findings.

*Shannon M. v. Saul*, 2020 WL 264522, at *6 (N.D. Ill. Jan. 17, 2020); *see also Collins v. Barnhart*, 114 F. App'x 229, 234 (7th Cir. 2004) ("[T]he existence of [medical] conditions alone does not prove that the conditions so functionally limited her as to rendered her completely disabled during the relevant period.").

The ALJ's determination that Claimant could perform light work with some postural and environmental limitations was supported by substantial evidence and the ALJ satisfied her obligation to articulate the basis for that determination. Remand is not required on this issue.

### B. ALJ's Findings Regarding Claimant's Mental Impairments

With regard to her mental limitations, the ALJ found that Claimant had the ability to

> understand, remember, and carry out short, simple, routine instructions. She can sustain the attention and/or concentration needed for 8 hours in the workday on short, simple, routine tasks, but no fast-paced production work, such as assembly line work. She can have only occasional interactions with supervisors and coworkers, and no interactions with the general public as part of the job tasks/duties.

10

[Dkt. 9-2 at 17.] Claimant makes several arguments regarding this determination.

First, Claimant takes issue with the ALJ's finding that the opinion of psychological consultative examiner Steven Marlow, Ph.D., was only partially persuasive. With regard to Dr. Marlow's opinion, the ALJ stated:

> Psychological consultative examiner, Steven Marlow, Ph.D., opined the claimant has average levels of understanding, poor social interactions, and poor levels of persistence, memory, and concentration. Dr. Marlow stated the claimant handled changes in her work environment poorly, got along good with coworkers and supervisors, and avoids the generally public. He noted she can do simple tasks (Exhibit 6F/5). I find this opinion only partially persuasive because it is vague and appears to reiterate claimant's subjective complaints. It is arguably consistent with simple, routine tasks. However, as discussed above, the medical and other evidence of record does not support greater non-exertional limitations than those set fourth [sic] in the residual functional capacity.

[Dkt. 9-2 at 21.] The Court agrees with Claimant that the ALJ failed to provide an adequately supported reason for this determination. As Claimant correctly notes, when it comes to mental health impairments, an ALJ may not discount a medical opinion simply because it is based on the claimant's subjective reports; to do so ignores the nature of mental health treatment. *See Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018) (citing *Price v. Colvin*, 794 F.3d 836, 839-40 (7th Cir. 2015) ("all findings in psychiatric notes must be considered, even if they were based on the patient's own account of her mental symptoms")). As the Seventh Circuit has noted,

> the subjective report is not simply transcribed: it is filtered through the psychologist's training and judgment. Like a medical doctor evaluating physical pain, a psychologist must start with the patient's description of her own experience; this is not a defect. Subjective complaints are nevertheless assessed according to the profession's objective criteria; what the psychologist puts out is not a simple transcription of the patient's self-report.

11

*Thompson v. Berryhill*, 722 F. App'x 573, 581 (7th Cir. 2018) (internal citations omitted). Further, it is not clear what the ALJ found to be "vague" about Dr. Marlow's report, which is quite thorough and straightforward. *See* [Dkt. 9-7 at 144].

The ALJ's mental RFC determination does not appear to account for Dr. Marlow's opinion that Claimant "has poor levels of persistence, memory and concentration" and "below average mental control." *Id.* Presumably, then, the ALJ found those opinions to be unpersuasive. The error of the ALJ's failure to provide the requisite minimal articulation to support this implicit finding is compounded by the fact that the ALJ also does not adequately support her finding at step 3 that Claimant has only a moderate limitation in concentrating, persisting, or maintaining pace. The ALJ explained that finding as follows:

> With regard to concentrating, persisting, or maintaining pace, the claimant has no more than a moderate limitation. At the hearing, the claimant testified she has trouble focusing and concentrating; however, she was generally able to follow along and answer questions appropriately (Hearing Testimony). At the psychological consultative examination, the claimant demonstrated below average mental control, but she was able to solve serial sevens and perform simple math, and she did not display any significant abnormalities in thought content or thought process (Exhibit 6F/3-4). Mental status examinations by the claimant's treatment providers revealed full orientation, good concentration, and normal thought process and thought content, though there was one mention of circumstantial thought process (Exhibits 2F/16; 3F/7, 12; 5F/7, 11, 15; 8F/11, 22). Moreover, she reported she can pay bills and manage money, shop, play videogames, watch television, and perform household chores (Exhibits 6E; 6F/4-5; Hearing Testimony).

[Dkt. 9-2 at 16.] The hearing lasted 42 minutes, and approximately one quarter of it consisted of the testimony of the vocational expert. [Dkt. 9-2 at 36.] Claimant's ability to pay attention for the short period of time she provided testimony says little about her ability to concentrate, persist, and maintain pace for an eight-hour work day. Nor does the ALJ explain how the Claimant's ability to perform the listed activities suggests that she can concentrate, persist, and

12

maintain pace for an eight-hour work day. Further, Dr. Marlow—an expert—considered Claimant's performance during the entire consultative exam and determined that Claimant's mental control was below average, despite her performance on the serial sevens and simple math portions of the exam. The basis for the ALJ's belief that Dr. Marlow's conclusion is incorrect is unclear.

With regard to the mental status examinations cited by the ALJ, one of the cited documents does not contain a mental status exam report; it relates to blood test results. [Dkt. 9-7 at 173] (Ex. 8F/22). The other documents do contain mental status exam reports, but only one of them mentions concentration. *See* [Dkt. 9-7 at 47, 55] (Ex. 3F, 12); *id.* at 129 (Ex. 5F at 7); *id.* at 133 (Ex. 5F at 11); *id.* at 137 (Ex. 5F at 15); *id.* at 162 (Ex. 8F at 11) (none of which mention concentration). Exhibit 2F/16 is an initial mental health treatment assessment by the Hamilton Center that does note in the mental status exam report that Claimaint's "cognition/concentration" was "good," *id.* at 39, but that same visit report also diagnoses Claimant with generalized anxiety disorder and notes that she suffers from difficulty concentrating as a result of that disorder, *id.* at 40. Thus, the cited documents fail to provide support for the ALJ's rejection of Dr. Marlow's opinion that Claimant has poor levels of persistence, memory and concentration.

Because the ALJ's determination regarding the persuasiveness of Dr. Marlow's opinion is not supported by substantial evidence, remand is required to permit the ALJ to reevaluate her assessment of Dr. Marlow's opinion, as well as her mental RFC determination, which is intertwined with that assessment. Also on remand, the ALJ shall reassess her subjective symptoms evaluation with regard to Claimant's mental impairments, which was also impacted by the ALJ's assessment of Dr. Marlow's opinion.

V.  Conclusion

For the reasons stated above, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED** and **REMANDED for further proceedings consistent with this Report and Recommendation**.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO ORDERED.

Dated:  3 DEC 2024

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.