UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

JASON L. BITZEGAIO,                        )
                                           )
                   Plaintiff,              )
                                           )
          v.                               )    No. 2:23-cv-00561-JPH-MJD
                                           )
LELAND C. DUDEK Acting Commissioner        )
of Social Security,                        )
                                           )
                   Defendant.              )

**ORDER GRANTING MOTION FOR ATTORNEY FEES**

Claimant Jason B.[1] brought this action after her Social Security

application was denied, asking the Court to review the agency decision.  Dkt. 1.

After the agency decision was reversed and remanded, Claimant filed a motion for

$14,275.80 in attorney fees under the Equal Access to Justice Act ("EAJA"), 28

U.S.C. § 2412(d).  Dkt. [20].  The Commissioner objects, arguing that his position

was substantially justified, or in the alternative, the request is excessive and

proposes an award of $9,686.17.  Dkt. 24.  For the reasons below, the Claimant's

motion for attorney fees, dkt. [20], is **GRANTED**, however the award is reduced to

$11,739.64.

---

[1] To protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

# I.
# Facts & Background

Claimant initiated this lawsuit asking the Court to reverse the Commissioner's decision to deny her application for disability insurance benefits. Dkt. 9-2.  After reviewing the agency decision, Magistrate Judge Dinsmore found two issues regarding the ALJ's determination of Claimant's mental impairments and recommended that this Court reverse and remand based on these errors. Dkt. 17 at 10–12.  First, the ALJ did not properly articulate why Dr. Marlow's opinion was discounted, because she did not explain what was "vague" about his opinion, and discounting his opinion because it "appeared to be based on Claimant's subjective complaints," was against Seventh Circuit precedent for considering mental health medical opinions.  *Id.* at 11.

Second, when determining Claimant's residual functional capacity ("RFC"), the ALJ's reasoning for the finding that Claimant had only a moderate limitation did not account for Dr. Marlow's findings that Claimant has "poor levels of persistence, memory, and concentration" and "below average mental control."  *Id.* As a result, the ALJ failed to adequately articulate her findings at Step 3, because the evidence the ALJ did cite "fail[ed] to provide support for the ALJ's rejection of Dr. Marlow's opinion."  *Id.* at 13.

There were no objections to the Magistrate's Report and Recommendation, and this Court adopted it.  Dkt. 18.  Claimant then filed a motion for attorney fees under the EAJA and asks that these attorney fees be directed to Claimant's attorney pursuant to an assignment agreement.  Dkt. 20.

2

## II.
## Discussion
### A. Substantial justification

Under the EAJA, a Court is to award attorney's fees and costs if the Claimant shows that "(1) she was a prevailing party; (2) the Government's position was not substantially justified; (3) no special circumstances existed that would make an award unjust; and (4) she filed a timely and complete application for fees." *Tchemkou v. Mukasey*, 517 F.3d 506, 509 (7th Cir. 2008) (citing 28 U.S.C. § 2412(d)(1)(A)–(B)).  Here, the Commissioner objects only to Claimant's contention that the Commissioner's position was not "substantially justified."  Dkt. 24 at 5.

The Commissioner's position is substantially justified if it is "justified to a degree that could satisfy a reasonable person."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).  A position need not be correct to be substantially justified, *id.*, rather, "[a] position taken by the Commissioner is substantially justified if it has a reasonable basis in fact and law, and if there is a reasonable connection between the facts and the legal theory.  *Stewart v. Astrue*, 561 F.3d 679, 683 (7th Cir. 2009).  The term "position" may encompass both the agency's prelitigation conduct and . . . subsequent litigation positions."  *Comm'r I.N.S. v. Jean*, 496 U.S. 154, 159 (1990).  The Commissioner bears the burden of establishing that his position throughout the entire proceeding was substantially justified. *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2024).

The first issue this Court granted remand on was the ALJ's discounting of Dr. Marlow's opinion as "vague" and that it "appears to reiterate claimant's

subjective complaints." Dkt. 17 at 11. Claimant argues that this position was not substantially justified because it was inconsistent with clearly established requirements for evaluating mental health opinions. Dkt. 25 at 3. The Commissioner responds that defending the ALJ's determination that Dr. Marlow's opinion was "vague" was substantially justified because Dr. Marlow assessed Claimant's functioning as "poor" and did not express specific functional limitations. Dkt. 24 at 8. Further, there was substantial justification in discounting Dr. Marlow's report because it was subjective and at odds with other contextual evidence. *Id.* at 9–10.

The ALJ's failure to articulate why Dr. Marlow's opinion was "vague," does not in itself support the conclusion that the position was not substantially justified. *Bassett v. Astrue*, 641 F.3d 857, 860 (7th Cir. 2011) ("[I]t typically takes something more egregious than just a run-of-the-mill error in articulation to make the commissioner's position unjustified[.]"); *Stein v. Sullivan*, 966 F.2d 317, 319–20 (7th Cir. 1992) ("The requirement that the ALJ articulate his consideration of the evidence is deliberately flexible . . . that the ALJ failed to meet this articulation requirement in no way necessitates a finding [that] the Secretary's position was not substantially justified.").

As the Magistrate Judge explained, however, the ALJ also discounted Plaintiff's subjective complaints, despite Seventh Circuit precedent holding that an ALJ may not discount a health care provider's opinion about the Claimant's mental health condition because the opinion was based on the Claimant's subjective reports. *See Price v. Colvin*, 794 F.3d 836, 839 (7th Cir. 2015)

4

("[P]sychiatric assessments are normally based primarily on what the patient tells the psychiatrist, so that if the judge were correct, most psychiatric evidence would be totally excluded from social security disability proceedings—a position that we rejected in *Adaire v. Colvin*, 788 F.3d 685, 688 (7th Cir. 2015)."); *Thompson v. Berryhill*, 722 Fed. App'x. 573, 581 (7th Cir. 2018) (vacating an ALJ's finding that a psychologist's opinion was "not worthy of great weight" because it was based on subjective reports as it was "inconsistent with the rule that opinions derived from subjective reports are not automatically suspect").

The Commissioner defends the ALJ's rejection of Dr. Marlow's opinions because they were based on Claimant's subjective reports. Dkt. 24 at 9. To support this, the Commissioner cites *Karr v. Saul*, where the Circuit held "an ALJ does not owe any deference to the portion of a treating physician's opinion [that is] based solely on the claimant's subjective complaints." 989 F.3d 508, 512 (7th Cir. 2021). *Karr* is readily distinguished, however, because that case involved a claimant's physical medical condition, and the issue was whether the doctor formed his opinion based on an MRI or only on what the claimant told the doctor. Id. *Karr* addressed only physical conditions, not mental health conditions, a distinction that matters greatly. Physical conditions can be evidenced by objective outside evidence like medical scans and tests, *id.*, while mental health reports are almost always based on subjective complaints, *see Price*, 794 F.3d at 839. So, discounting a mental health report because it is based on a claimant's subjective complaints would mean that these reports would never be considered by an ALJ. *Id.* Therefore, the Commissioner's defense of the ALJ's clearly

erroneous decision to discount Dr. Marlow's opinion because it was based on Claimant's subjective reports was not substantially justified.

Regarding the ALJ's determination of Claimant's mental RFC, the Magistrate Judge found error in the ALJ's determination that "with regard to concentrating, persisting, or maintaining pace, the claimant has no more than a moderate limitation." Dkt. 17 at 12. The Report and Recommendation explained that the ALJ erred in not accounting for Dr. Marlow's finding that Claimant has "poor levels of persistence, memory, and concentration," and "below average mental control." *Id.* Although the ALJ supplemented her determination with personal observations and citations to other medical records, these findings "fail[ed] to provide support for the ALJ's rejection of Dr. Marlow's opinion." *Id.* at 13.

The Commissioner argues that his reliance on the ALJ's determination was substantially justified because under Social Security Ruling 16-3p, an ALJ "will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as the evidence in the file." SSR 16-3p. The Magistrate Judge did not find error in the ALJ using her own observations to conclude the Claimant's RFC. *See* dkt. 17 at 12–13. Rather, the error was that the ALJ failed to support why she rejected Dr. Marlow's opinion that Claimant had poor levels of persistence, memory, and concentration. *Id.* at 13.

Under SSR 96-8p, an RFC assessment must be "'based on all relevant evidence in the case record, including, as particularly relevant here, medical

source statements."  *Huber v. Astrue*, 395 Fed. App'x. 299, 302 (7th Cir. 2010) (citing SSR 96-8p).  Further, the Ruling requires an ALJ to "provide a narrative discussion" to "explain how any material inconsistences or ambiguities in the evidence were considered and resolved . . . [and] [i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8; *Conrad v. Barnhart*, 434 F.3d 987, 991 (7th Cir. 2006) ("SSR 96-8p requires that medical source opinions must always be considered and addressed by the ALJ in the RFC assessment, and if it conflicts with the ALJ's conclusions then the ALJ must explain why it was not adopted.").

Here, although the ALJ was allowed to take other evidence into consideration when finding that Claimant had only a moderate limitation in concentrating, persisting, or maintaining pace, dkt. 9-2 at 16, the ALJ was obligated to reference Dr. Marlow's findings of "poor levels of persistence, memory, and concentration" and "below average mental control" and explain why she rejected them.  The Social Security Rulings and Circuit precedent require an ALJ to consider and address all medical opinions, and if the ALJ finds that it conflicts with other evidence, the ALJ must explain why it was not adopted.  *See Conrad*, 434 F.3d at 991.  The ALJ did not explain or discuss why Dr. Marlow's medical findings specifically related to a pace restriction was not adopted or that it conflicted with other evidence.  *See Huber*, 395 Fed. App'x. at 302 (finding no substantial justification when the ALJ failed to acknowledge the existence of a portion of an opinion that was directly relevant and contradicted the ALJ's mental RFC finding); *Byers v. Astrue*, No. 1:09-cv-01579, 2011 WL 2472992, at *1 (S.D.

Ind. 2011) (finding no substantial justification when ALJ failed to consider a highly relevant report).

The Commissioner further argues that the ALJ did not discount Dr. Marlow's opinion that Claimant has a limitation to simple, routine tasks, but instead incorporated his opinion. Dkt. 24 at 6. This does not help the Commissioner's position, however, as the Circuit has found substantial justification is lacking when, "the ALJ failed to even acknowledge the existence of the most directly relevant report by a physician on whom the ALJ otherwise relied." *Huber*, 395 Fed. App'x. at 303. So, the Commissioner's defense of the ALJ's failure to grapple with Dr. Marlow's specific findings related to a pace restriction was not substantially justified.

In conclusion, the Commissioner's decision to defend the ALJ's determination of the Claimant's mental RFC in litigation was not substantially justified because the ALJ discounted Dr. Marlow's opinion because it was based on Claimant's subjective reports and did not discuss Dr. Marlow's opinions of "poor levels of persistence, memory, and concentration" that supported a reduced RFC. Reasonable attorney fees are therefore warranted under the EAJA.

**B.     Reasonableness of Fees**

Claimant seeks an award for attorney fees of $14,275.80 for 58.1 hours of billed time. Dkt. 25 at 15. The Commissioner objects to this amount, arguing that the amount of hours spent on the matter was excessive, and the Court should reduce the total by 15 hours for a sum to $9,686.14. Dkt. 24 at 20.

Under the EAJA, the court may award "reasonable attorney's fees," which

are set at the market rate.  *See* 28 U.S.C. § 2412(d)(2)(A).  The party seeking fees bears the burden of establishing that the requested fees are reasonable.  *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); 28 U.S.C. § 2412(d)(1)(B) ("A party "shall . . . submit to the court . . . the amount sought, including an itemized statement from any attorney or expert witness representing or appearing on behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed.").  Counsel for the prevailing party should make a good-faith effort to avoid excessive, redundant, or otherwise unnecessary hours.  *Hensley*, 461 U.S. at 437.

Claimant's counsel's time log shows that counsel billed 55 attorney hours and 3.1 paralegal hours.  Dkts. 20-2 at 2; 25 at 16.  Three attorneys worked on this matter—AMD, BS, and JG.  Dkt. 20-2 at 1–2.  For the attorney hours, Claimant's attorneys billed 3.5 hours in 2023 at the rate of $232.99 per hour; 49.6 hours in 2024 at the rate of $239.26 per hour; and in 2025, 1.9 hours at $242.59 per hour.  *Id.*; Dkt. 25 at 16.  The paralegal rates were $129.96 per hour.  Dkt. 20-2 at 2.

The statutory rate for attorney fees under the EAJA is $125.00 per hour, 28 U.S.C. § 2412(d)(2)(A), but Claimant has appropriately adjusted the statutory rate for inflation using the Consumer Price Index ("CPI") for the Midwest market.  Dkt. 20-3 at 1–4; *Sprinkle v. Colvin*, 777 F.3d 421, 427–28 ("Courts should generally award the inflation-adjusted rate according to the CPI, using the date on which the legal services were performed.").

The Commissioner does not contest the reasonableness of the requested

9

hourly rates but only that Claimant's counsel spent (1) an unreasonable number of hours reviewing work; (2) an excessive amount of time reviewing the facts and prepared medical summary; and (3) billed for apparent training time.  Dkt. 24 at 20.

### i.     Hours spent on review

First, the Commissioner argues that Claimant's counsel spent an unreasonable amount of time reviewing and editing the work drafted by other attorneys.  Dkt. 24 at 20.  Claimant responds that having a supervising attorney reviewing work for consistency and compliance with procedural rules is standard practice in litigation, and therefore, not unreasonable.  Dkt. 25 at 8.

The time sheets reflect that for the opening brief, Claimant's attorneys billed 26.4 hours—attorney BS spent 21.7 hours preparing and drafting the opening brief, and attorney AMD spent 4.7 hours reviewing it.  Dkt. 20-2 at 1. For the reply brief, attorney JG billed 17.3 hours reviewing the case and drafting the reply, and attorney AMD spent 4.0 hours reviewing it, for a total of 21.3 hours.  *Id.*

To support his argument, the Commissioner cites *E.H. by Hayes v. Berryhill*, where the district court found that the allocation of time between two attorneys was not reasonable, because the time logs did not reflect the allocation of work.  No. 4:16-CV-39-PRC, 2018 WL 549954 (N.D. Ind. 2018).  This is not the case here—the time logs specifically state where the senior attorney was reviewing and editing work done by another attorney.  Dkt. 20-2 at 1–2.  It is reasonable for a senior attorney to spend 8.7 hours reviewing and finalizing two

briefs before filing because "[t]here is nothing inherently problematic about such a responsibility-sharing arrangement, for '[r]eview by a senior attorney ensures that the quality of the brief is high and that necessary revisions are made before the brief is filed.'" *Cole B.D. v. Kijakazi*, No. 1:22-cv-000405, 2023 WL 6541475, at *2 (S.D. Ind. 2023) (citing *Kinsey-McHenry v. Colvin*, No. 2:12-cv-332, 2014 WL 1643455, at *2 (N.D. Ind. 2014); *see also Joseph S. v. Kijakazi*, No. 2:21-cv-00470-JPH-MJD, 2023 WL 2866724, at *2 (S.D. Ind. 2023) (finding the that one attorney spending her time drafting a document and a lead attorney reviewing it was reasonable).

### ii.   Hours spent reviewing the facts

Next, the Commissioner argues that having three attorneys familiarize themselves with the facts of the case was unreasonable, considering the relatively short record—591 pages—and because there was a prepared medical summary. Dkt. 24 at 16.  The Claimant argues that the time spent reviewing and summarizing facts was necessary because Claimant's counsel did not represent Claimant at the administrative level, social security cases are factually complex, and each attorney had their own role in the ligation.  Dkt. 25 at 10.

Claimant is correct that reasonable time expended reviewing the facts and creating legal arguments is necessary in social security cases, especially when counsel did not represent the Claimant at the administrative level.  *See Seefeldt v. Colvin*, No. 14-CV-320, 2016 WL 5793683, at *1 (E.D. Wis. 2016) (noting that 58.6 hours spent on a case was reasonable, even if the issues were not complex or novel, because counsel did not represent the claimant at the administrative

record).  Further, although the Commissioner insists so, a 591-page record is not short.  *Joseph S.*, 2023 WL 2866724, at *2 ("A 435-page administrative record is not short.").

Still, having one attorney spend 13 hours preparing and familiarizing themselves with the record for an opening brief, and then having a second attorney spend 10.6 additional hours reviewing the record for the reply brief is redundant.  *See E.H. by Hayes*, 2018 WL 549954, at *2 (reducing requested attorneys' fees by twelve hours because "it is unreasonable for two attorneys to take the time to become familiar with the same set of facts.").  The Claimant argues that there is nothing in the EAJA that says having three attorneys work on a matter is impermissible, and that each had a different role in the case, dkt. 25 at 8.  But this does not meet the burden of showing why it was necessary for two attorneys to each review the record, one for writing the opening brief and the other for writing the reply brief.  Therefore, the Court will reduce by 10.6 hours, to reflect the duplication of time expended by the third attorney in reviewing the case and facts to write the reply brief.

### iii.    Training time

Lastly, the Commissioner contends that Claimant's attorneys billed for apparent training time, which the government should not pay for, because attorney JG graduated law school about a year prior to beginning work on the reply brief.  Dkt. 24 at 18.  The Claimant responds that no time was billed for training time.  Dkt. 25 at 9.

Claimant's counsel's logs do not reflect that any time was expensed

training a new associate.  *See* dkt. 20-2 at 1–2.  Each entry specifically shows that each billed task related to the development of Claimant's case.  *Id.*  The Commissioner does not point to a specific entry that is problematic to show potential training time, rather, he relies on the fact that the attorney graduated in 2023.  Dkt. 24 at 18.  Although the attorney may be a more-recent graduate, nothing in the timesheets indicate that the government would be paying for time spent training a new associate.  *See Smith v. Colvin*, No. 2:12-cv-259, 2014 WL 856415, at *2 (N.D. Ind. 2014) (rejecting a similar argument because "there is no evidence of record that [claimant's] counsel was asking for training time"); *Abhsie v. Berryhill*, No. 16-cv-7357, 2017 WL 4804741, at *2 (N.D. Ill. 2017) (rejecting a similar argument because "the itemized time records in this case do not appear to include time spent on background training or purely educational endeavors unrelated to [claimant's] case").

In conclusion, the Claimant's requested attorney's fees are reduced by 10.6 hours, from 55 hours to 44.4 hours.  The duplicative hours occurred in the 2024, so the amount will be reduced by $2,536.16 ($239.26 x 10.6).  Dkt. 20-2 at 2.  Therefore, the total requested attorney's fees are reduced from $14,275.80 to $11,739.64.  If counsel can verify that Claimant owes no preexisting debt subject to offset, the Commissioner will direct that award be made payable to Claimant's counsel pursuant to the EAJA assignment agreement between Claimant and counsel.  Dkt. 20-1 at 1–3.

**IV.
Conclusion**

Because the Commissioner's position was not substantially justified,

Claimant's motion for attorney's fees, dkt. [20], is **GRANTED**.  However, because some billed hours were duplicative, the award is reduced from $14,275.80 to $11,739.64.

**SO ORDERED.**

Date: 4/15/2026

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel.